# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2918

_____

Arkansas United; L. Mireya Reith

*Plaintiffs - Appellees*

v.

John Thurston, in his official capacity as the Secretary of State of Arkansas; Sharon Brooks, in her official capacity as a member of the Arkansas State Board of Election Commissioners; Bilenda Harris-Ritter, in her official capacity as a member of the Arkansas State Board of Election Commissioners; William Luther, in his official capacity as a member of the Arkansas State Board of Election Commissioners; Charles Roberts, in his official capacity as a member of the Arkansas State Board of Election Commissioners; James Sharp, in his official capacity as a member of the Arkansas State Board of Election Commissioners; J. Harmon Smith, in his official capacity as a member of the Arkansas State Board of Election Commissioners

*Defendants - Appellants*

Remee Oelschlaeger, in her official capacity as a member of the Washington County Election Commission; Bill Ackerman, in his official capacity as a member of the Washington County Election Commission; Max Deitchler, in his official capacity as a member of the Washington County Election Commission; Jennifer Price, in her official capacity as a member of the Washington County Election Commission; Russell Anzalone, in his official capacity as a member of the Benton County Election Commission; Robbyn Tumey, in her official capacity as a member of the Benton County Election Commission; Harlan Stee, in his official capacity as a member of the Benton County election Commission; David Damron, in his capacity as a member of the Sebastian County Election; Luis Andrade, in his capacity as a member of the Sebastian County Election; Lee Webb, in his capacity as a member of the Sebastian County Election; Meghan Hassler, in her capacity as

a member of the Sebastian County Election

*Defendant*s

-------------------------------

State of Nebraska; State of Alabama; State of Alaska; State of Florida; State of Georgia; State of Indiana; State of Kentucky; State of Louisiana; State of Mississippi; State of Montana; State of New Hampshire; State of Ohio; State of Oklahoma; State of South Carolina; State of Tennessee; State of Texas; State of Utah; State of West Virginia; Honest Elections Project

*Amici on Behalf of Appellant(s)*

United States

*Amicus on Behalf of Appellee(s)*
_____

No. 23-1154
_____

Arkansas United; L. Mireya Reith

*Plaintiffs - Appellees*

v.

John Thurston, in his official capacity as the Secretary of State of Arkansas; Sharon Brooks, in her official capacity as a member of the Arkansas State Board of Election Commissioners; Bilenda Harris-Ritter, in her official capacity as a member of the Arkansas State Board of Election Commissioners; William Luther, in his official capacity as a member of the Arkansas State Board of Election Commissioners; Charles Roberts, in his official capacity as a member of the Arkansas State Board of Election Commissioners; James Sharp, in his official capacity as a member of the Arkansas State Board of Election Commissioners; J. Harmon Smith, in his official capacity as a member of the Arkansas State Board of Election Commissioners

*Defendants - Appellants*

Remee Oelschlaeger, in her official capacity as a member of the Washington County Election Commission; Bill Ackerman, in his official capacity as a member of the Washington County Election Commission; Max Deitchler, in his official capacity as a member of the Washington County Election Commission; Jennifer Price, in her official capacity as a member of the Washington County Election Commission; Russell Anzalone, in his official capacity as a member of the Benton County Election Commission; Robbyn Tumey, in her official capacity as a member of the Benton County Election Commission; Harlan Stee, in his official capacity as a member of the Benton County Election Commission; David Damron, in his capacity as a member of the Sebastian County Election; Luis Andrade, in his capacity as a member of the Sebastian County Election; Lee Webb, in his capacity as a member of the Sebastian County Election; Meghan Hassler, in her capacity as a member of the Sebastian County Election

*Defendant*s

------------------------------

United States

*Amicus on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Western District of Arkansas
_____

Submitted: April 17, 2025
Filed: July 28, 2025
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

In *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*, 86 F.4th 1204 (8th Cir. 2023), *reh'g denied*, 91 F.4th 967 (8th Cir. 2024), we held there is no private right of action under § 2 of the Voting Rights Act (VRA). Here,

we are asked to decide whether there is a private right of action under § 208 of the VRA. Like the provision at issue in *Arkansas State Conference*, we conclude the text and structure of § 208 do not create a private right of action. Likewise, we conclude no private right of action is created by the Supremacy Clause.

## I.

In 2009, the Arkansas legislature enacted an amendment providing that "[n]o person other than [an election official] shall assist more than six (6) voters in marking and casting a ballot at an election." Ark. Code Ann. § 7-5-310(b)(4)(B) (the Six-Voter Provision); 2009 Ark. Acts 658. Violating this provision is a Class A misdemeanor. Ark. Code Ann. § 7-1-103(a)(19)(C), (b)(1). The Six-Voter Provision also requires "poll workers at the polling site to make and maintain a list of the names and addresses of all persons assisting voters." *Id.* § 7-5-310(b)(5).

Here, Arkansas United, a non-profit organization that educates immigrants about the voting process, and L. Mireya Reith, Arkansas United's founder and executive director (collectively, United), sued John Thurston, then-Secretary of State of Arkansas, members of the Arkansas State Board of Election Commissioners in their official capacities (collectively, the State), and various Arkansas county election officials in their official capacities (collectively, the Counties), asserting that the Six-Voter Provision is preempted by § 208 of the VRA. Section 208 of the VRA states, "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

At 11:21 p.m. on November 2, 2020, the night before Election Day, United filed an emergency motion for a temporary restraining order or preliminary injunction against the State and the Counties, alleging the Six-Voter Provision burdened their ability to assist voters with limited English proficiency at the polls and conflicted with § 208 of the VRA. The district court denied the motion. The

State and the Counties moved to dismiss the case, arguing, among other things, that United had no private right of action to enforce § 208. The district court denied their motions, reasoning a private right of action existed. After discovery, the parties filed cross-motions for summary judgment. In August 2022, the district court granted summary judgment in part for United, enjoining the State and the Counties and "all persons acting in concert with" the State and the Counties from enforcing the Six-Voter Provision, and denied the State's and the Counties' summary judgment motions. The district court then issued an amended order to clarify it enjoined and further ordered the Arkansas State Board of Election Commissioners to issue a memorandum regarding the district court's rulings to all county boards by September 16, 2022, just thirty-eight days before voting was set to begin for the 2022 General Election.

Due to the proximity of both the deadline to issue the memorandum and the upcoming election, the State sought an emergency stay of the injunction, which the district court denied. The State then sought an emergency stay from this court. We granted a temporary administrative stay pending briefing by the parties, followed by a stay of the injunction pending appeal. The 2022 General Election thus proceeded with Arkansas's Six-Voter Provision in place. In January 2023, the district court granted United's motion for attorney fees and costs and awarded $103,030.43. On appeal, the State now challenges the district court's amended order and judgment granting in part United's motion for summary judgment, determining that private plaintiffs could sue to enforce § 208 of the VRA, and denying the State's summary judgment motion, as well as the district court's order awarding United attorney fees and costs.

## II.

We review statutory interpretation issues de novo, *Ark. State Conf.*, 86 F.4th at 1208, and a district court's grant of a permanent injunction for abuse of discretion, *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 771 (8th Cir. 2015). "Like substantive federal law itself, private rights of action to enforce federal law must be

created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* Statutory intent is determinative in interpreting whether a private right of action exists. *See id.* Where a statute does not "say when a private right of action is available . . . it is not [a court's] place to fill in the gaps, except when 'text and structure' require it." *Ark. State Conf.*, 86 F.4th at 1209 (quoting *Sandoval*, 532 U.S. at 288). "Under the modern test for implied rights of action, Congress must have *both* created an individual right *and* given private plaintiffs the ability to enforce it." *Id.*

Our decision in *Arkansas State Conference* guides us here. In *Arkansas State Conference*, a civic organization tried to bring an action under § 2 against the various Arkansas state officers, alleging that a reapportionment plan approved by the Arkansas Board of Apportionment unlawfully diluted black voters' influence in elections. *Id.* at 1207. We held that, based on the text and structure of the VRA, Congress did not give private plaintiffs the ability to sue under § 2 and concluded that § 3 did not create an implied private right of action for § 2. *Id.* at 1206–07, 1213.

We need not discuss the first step, whether § 208 creates an *individual right*, because United cannot prevail on the second step, whether § 208 has a *private remedy*. *See id.* at 1209. Like § 2, the text of § 208 "itself contains no private enforcement mechanism." *Id.* at 1210. Section 208 speaks only of the assistance that a voter "may be given," 52 U.S.C. § 10508; it is silent as to "*who* can enforce it," *Ark. State Conf.*, 86 F.4th at 1210. *See* 52 U.S.C. § 10508. So, "[w]e must look elsewhere for the who." *Ark. State Conf.*, 86 F.4th at 1210. We turn to § 11 and § 12 of the VRA to find our answer.

Section 11(a) states, "No person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote under any provision of chapters 103 to 107 of this title . . . ." 52 U.S.C. § 10307(a). Section 12(d) states:

Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section [11] of this title, . . . the Attorney General may institute for the United States, or in the name of the United States, an action for preventative relief, including an application for a temporary or permanent injunction . . . .

*Id.* § 10308(d). Notably, § 12 contains no "mention of private plaintiffs or private remedies." *Ark. State Conf.*, 86 F.4th at 1210. Moreover, "[t]he fact that § 12 lists criminal penalties among the potential remedies is strong evidence that it cannot provide a private right of action. . . . After all, private parties cannot seek prison time against violators." *Id.* at 1210 n.2. In other words, refusing to permit a person to vote who is entitled under § 208 may trigger an action by the Attorney General. *See* 52 U.S.C. §§ 10307(a), 10308(d), 10508. And the Attorney General may file an action for preventative relief if a state official is going to carry out a state law that would violate § 208. *See id.* § 10308(d).

While the remedies for § 208 are narrow, it is "all the text provides." *Ark. State Conf.*, 86 F.4th at 1210. As the Supreme Court has put it, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. "If the text and structure of [§§ 208, 11, and 12] show anything, it is that 'Congress intended to place enforcement in the hands of the [Attorney General], rather than private parties.'" *See Ark. State Conf.*, 86 F.4th at 1211 (second alteration in original) (quoting *Freeman v. Fahey*, 374 F.3d 663, 665 (8th Cir. 2004)).

To find United's ability to privately enforce § 208, the district court looked to a purported escape hatch in § 3 of the VRA. It reasoned that Congress explicitly created a private right of action to enforce the entire VRA because § 3 contemplates "proceeding[s] instituted by . . . an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(b). Not so. We have determined that "§ 3 sets ground rules in the types of lawsuits each can bring." *Ark. State Conf.*, 86 F.4th at 1213. It thus merely "recognizes that *some*

voting-rights protections are enforceable by someone other than the Attorney General," and when that is true, "provides for various forms of equitable and other relief." *Id.* at 1211. Like we did in *Arkansas State Conference*, we reject the view that § 3 implicitly "created new private rights of action for every voting-rights statute that did not have one," which would require us to "conclude that Congress hid the proverbial 'elephant in a mousehole.'" *Id.* at 1212 (brackets omitted) (quoting *Turkiye Halk Bankasi A.S. v. United States*, 143 S. Ct. 940, 948 (2023)). "'Congress . . . knows how to create a cause of action,' and it did not do so here." *Id.* (ellipses in original) (quoting *Hernández v. Mesa*, 140 S. Ct. 735, 752 (2020) (Thomas, J., concurring)).

With no private right of action to enforce § 208 available under § 3, we turn to United's next argument: whether one exists under the Supremacy Clause. United argues the district court separately determined a standalone private right of action existed under the Supremacy Clause. It did not. The district court decided a cause of action existed for § 208 and mentioned the Supremacy Clause only in reference to United's preemption argument. But even if it had, the Supreme Court has explained that the Supremacy Clause "creates a rule of decision," not a cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015). "It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* at 325. To be sure, the Supreme Court has alluded to the possibility that preemption principles may be a source for equitable relief when no other remedy is available. *See id.* at 326–28. But because § 208 has its own enforcement structure, we conclude equitable relief is not available for § 208 under these principles. *See id.* United cannot succeed on this basis.

This brings us to the attorney fees and costs. The district court awarded $103,030.43 to United. The fees and costs were awarded under § 14(e) of the VRA, which provides that fees and costs may be awarded to a "prevailing party" in any action "to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10310(e). Because we conclude neither the VRA nor the Supremacy

Clause create a private right of action for § 208, United is not a prevailing party in an action to enforce voting guarantees. Thus, their award of fees and costs is vacated. *See Advantage Media, L.L.C. v. City of Hopkins*, 511 F.3d 833, 838–39 (8th Cir. 2008).

## III.

In light of the foregoing, we reverse the grant of summary judgment for United and denial of summary judgment for the State, vacate the permanent injunction and award of attorney fees and costs, and remand for further proceedings consistent with this opinion.

_____